# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

| | |
|---|---|
| **ROBERT ARBAUGH,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| v. ) | **Civil Action No. 5:10-0528** |
| ) | |
| **DAVID BERKEBILE, Warden,** ) | |
| **FCI Beckley,** ) | |
| ) | |
| **Respondent.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

On April 20, 2010, Petitioner filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. (Document No. 1.) On April 27, 2010, Petitioner filed an Addendum to his Petition. (Document No. 7.)[1] Petitioner basically contends that the Bureau of Prisons [BOP] is not considering inmates for designation to Community Corrections Center [CCC] or Residential Reentry Center [RRC] placement for periods of time longer than six months when 18 U.S.C. § 3624(c) now requires that they be considered for such placement for up to the last twelve months of their sentences. Thus, Petitioner states that he has not been designated for CCC or RRC placement for a period of time longer than six months. On May 26, 2010, Petitioner filed a Motion for Preliminary Injunction requesting that the District Court order the BOP "to reassess Petitioner for RRC placement under the statutory language only, and without regard to the BOP's regulations, rules and program statements which are, at best, legally compromised." (Document No. 8.) Having examined the record and applicable law, the undersigned finds that the circumstances which Petitioner alleges as grounds

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

for relief under Section 2241 do not indicate that Petitioner is in custody in violation of the Constitution or laws of the United States and therefore respectfully recommends that Petitioner's Petition (Document Nos. 1 and 7.) be dismissed and his Motion for Preliminary Injunction (Document No. 8.) be denied.

## **BACKGROUND**

By Indictment filed on November 19, 2003, Petitioner was charged in this District along with another person with conspiring to distribute cocaine in violation of 21 U.S.C. § 846. United States v. Arbaugh, Criminal No. 5:03-0264 (Document No. 17.) Petitioner pled guilty to the charge on February 19, 2004 (Id., Document No. 60.), and the District Court sentenced him in June, 2004, to an 18 month term of incarceration and a three year term of supervised release and imposed a $100 special assessment and a $2,000 fine. (Id., Document No. 82.) It appears that Petitioner commenced his term of supervised release on February 18, 2005. (Id., Document No. 103.) By Criminal Complaint filed on October 20, 2005, in the Western District of Virginia, Petitioner was charged along with another person with possessing a firearm having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1), conspiring to distribute cocaine in violation of 21 U.S.C. § 846, possessing cocaine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). United States v. Arbaugh, Criminal No. 7:05-0095 (Document No. 1.). On October 27, 2005, an Indictment was filed in the Western District of Virginia charging Petitioner and another person with conspiring to distribute five grams or more of cocaine base (Counts One and Two), aiding and abetting or using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) and 2 (Count Three) and possessing a firearm having been convicted of a felony in

violation of 18 U.S.C. § 922 (g)(1) (Count 4). (Id., Document No. 11.) On October 31, 2005, a Petition for Warrant or Summons for Offender Under Supervision was filed in this District charging that Petitioner was arrested in the Western District of Virginia for possessing an automatic weapon and trying to exchange it for an ounce of cocaine and tested positive twice for cocaine. United States v. Arbaugh, Criminal No. 5:03-0264, Document No. 103., and a warrant was issued for Petitioner's arrest. (Id., Document No. 104.) On May 1, 2006, Petitioner entered a guilty plea in the Western District of Virginia to the charges contained in two or three counts of the Indictment. United States v. Arbaugh, Criminal No. 7:05-0095, Document No. 41. By Order Transferring Jurisdiction filed on July 20, 2006, this District Court transferred jurisdiction over the supervised release revocation matter to the Western District of Virginia. United States v. Arbaugh, Criminal No. 5:03-0264, Document No. 114. On July 13, 2006, the District Court for the Western District of Virginia sentenced Petitioner to a 58 month term of incarceration and a three year term of supervised release and imposed a $100 special assessment and a $500 fine. United States v. Arbaugh, Criminal No. 7:05-0095, Document No. 50. The District Court for the Western District of Virginia also sentenced Petitioner to an 18 month term of incarceration upon his violation of supervised release consecutively to his 58 month term of imprisonment. United States v. Arbaugh, Criminal No. 7:06-0062 (Document No. 4.) The District Court therefore sentenced Petitioner to a total of 76 months in prison. The Bureau of Prisons' Inmate Locator indicates that Petitioner's projected release date is June 28, 2011.

## **PETITIONER'S CLAIMS**

Petitioner contends that, notwithstanding Congress' amendment of 18 U.S.C. § 3624(c) under the Second Chance Act of 2007 extending the maximum period of time when the Bureau of

Prisons is required to hold a prisoner at the end of his term of incarceration "under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for reentry of that prisoner into the community"from six to twelve months, the Bureau of Prisons "has taken the position that . . . no inmates will receive more than an 180-day RRC stay." (Document No. 1, p. 6.) Referring to the BOP's April 14 and November 14, 2008, Memoranda, Program Statement 7310.04 and comments of BOP Director Lappin at a 2008 Sentencing Commission Symposium, Petitioner contends that the BOP has established policies and procedures inconsistent with Congress' direction in enacting the Second Chance Act by creating a presumption that no inmate will be designated to more than six months in a CCC or RRC. Petitioner complains that while he was statutorily eligible for CCC or RRC placement a year before his projected release date, the BOP considered Petitioner for placement in an RRC in February, 2010, and decided to refer him for a 150 to 180 day CCC or RRC placement. (Id., p. 8.) Petitioner indicates that he complained and appealed through the BOP's administrative remedy process to the Regional level. Petitioner submitted a copy of Respondent's April 19, 2010, response to his request for administrative remedy and his April 22, 2010, appeal to the Regional Office as Exhibits A and B to his Addendum to his Petition (Document No. 7.) Respondent stated as follows in his April 19, 2010, response to Petitioner's request for administrative remedy (Id., Exhibit A.):

> This is in response to your Administrative Remedy received on March 31, 2010, in which you requested assistance in receiving a 12 month RRC placement and/or a written statement documenting the specific and detailed reasons why you were denied.
>
> On April 9, 2008, the Second Chance Act of 2007 was signed into law thereby changing the Bureau of Prisons' statutory authority for making pre-release RRC placement decisions.
>
> Although the Act increased the maximum time allowed for pre-release RRC

4

> placement to 12 months, it does not mandate a 12 month RRC placement. Rather, RRC decisions are to be made on an individual basis according to the new criteria identified in the Act, in addition to criteria identified in 18 U.S.C. § 3621(b).
>
> On December 9, 2009, your case was reviewed by your Unit Team pursuant to the criteria required by the Second Chance Act. Based on this review and the five factor analysis criteria, it was determined that a six month RRC placement is an appropriate placement and is adequate to allow you to successfully transition back into the community. At this time, there are no extenuating circumstances in your case warranting a 12 month RRC placement.
>
> Based on the above facts, I can find no basis for further administrative action. Your request for administrative relief is denied. If dissatisfied with this response, you may appeal to the regional Director, Bureau of Prisons, Mid-Atlantic Region, 302 Sentinel Drive, Suite 200, Annapolis Junction, Maryland 20701, within twenty (20) calendar days of the date of this response.

Petitioner asserts that he should not be required to exhaust administrative remedies, however, because "[w]ith but a few months to go to the point in his sentence when Petitioner is eligible for RRC placement pursuant to 18 U.S.C. § 3624(c), requiring Petitioner to complete the BOP's remedy process will consume a significant percentage of his available RRC time, irreparably harming him." (Document No. 1, p. 14.) Petitioner states that "[c]ompleting the BOP's remedy process would not occur until days prior to the inmate's RRC eligibility date, leaving no time for a timely court review." (Id.) Petitioner further contends that utilizing the BOP's remedy process would be futile because "[t]he Bureau has not granted more than a six month RRC placement in more than two decades." (Id.)

On May 26, 2010, Petitioner filed a Motion for Preliminary Injunction. (Document No. 8.) Citing the four factor standard for the issuance of an injunction, Petitioner asserts that (1) he is likely to succeed on the merits because the BOP has arbitrarily and capriciously failed to implement the Second Chance Act; (2) he is irreparably harmed if he is not considered for the full twelve month CCC or RRC designation because he will not have as much time to develop resources necessary for

a successful transition into the community; (3) the BOP will sustain no harm as it will continue to hold him in custody when he is designated to a CCC or RRC, and it costs less to keep an inmate in such a facility than it costs to keep the inmate in prison or a camp; and (4) it is in the public's interest that an inmate spend a longer period of time in such a facility as he has more resources and is better adjusted for release into the community. Petitioner therefore requests that the District Court order the BOP "to reassess Petitioner for RRC placement under the statutory language only, and without regard to the BOP's regulations, rules and program statements which are, at best, legally compromised."

## DISCUSSION

In considering an inmate's petition for *habeas* relief under 28 U.S.C. § 2241, the Court must determine whether the Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975).

### A. **Exhaustion of Administrative Remedies.**

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241. See McClung v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001)); Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court. See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d

6

291 (1992). The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an

opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

Petitioner acknowledges that he did not exhaust his administrative remedies prior to initiating this action on April 20, 2010. Petitioner has submitted copies of administrative remedy documents indicating that he processed the claim which he raises herein to the regional level. It is not evident that he took his claim to the General Counsel level. Petitioner, therefore, failed to fully exhaust his administrative remedies prior to filing the instant action. Exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. It is clear, however, that exhaustion should not be excused simply because an inmate believes that the length of the exhaustion process will prevent the inmate from receiving a full 12 month RCC placement. See Wright v. Warden, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy)(finding that "[e]haustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals before the 12-month pre-release mark"); Wright v. Warden, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy); also see Yannucci v. Stansberry, 2009 WL 2421546, * 3 (E.D.Va. Jul. 28, 2009)(slip copy)(finding that inmate's claim that "he ran out of time to complete the administrative exhaustion process prior to filing his petition is not a sufficient excuse for failing to exhaust his [RRC] claims"); and Garrison v. Stansberry, 2009 WL 1160115, * 3 (E.D.Va. Apr. 29, 2009)(slip copy)(explaining that granting review of RRC placement claims because of "time-sensitivity" would encourage the filing of similar petitions before the administrative remedy process has run its course, which would "both undermine the effectiveness of the administrative review process and burden the Court with superfluous claims"). Based on the foregoing, the undersigned finds that Petitioner is not excused from exhausting his administrative remedies and his Petition should be dismissed.

**B.**     <u>**Application of 18 U.S.C. §§ 3621(b) and 3624(c).**</u>

Pursuant to Title 18 U.S.C. § 3621, the BOP has authority to designate a prisoner's place of imprisonment. Section 3621(b) provides five factors to be considered by the BOP in determining a prisoner's placement:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence -
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3624(c) provides that a prisoner may be granted pre-release custody to serve a portion of his sentence in the community, such as on home confinement or in a CCC or RRC. <u>See</u> 18 U.S.C. § 3624. Section 3624(c)(1) governs pre-release CCC or RRC placement. As amended by the Second Chance Act of 2007, Section 3624(c)(1) provides as follows:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

The Second Chance Act required the BOP to issue new regulations to ensure that RRC placements are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6). In compliance with the above, the BOP

adopted regulations set forth in 28 C.F.R. § 570.20 - .22. Section 570.21 provides that a prisoner's maximum allowable time in a RRC placement is 12 months. See 28 C.F.R. § 570.21. The regulations, however, do not set any minimum amount of time that a prisoner must spend in a CCC or RRC. Section 570.22 requires the BOP to make CCC or RRC placement decisions "on an individual basis" and to allow placement "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." The 12-month CCC or RRC period is a statutory maximum and it is not mandatory that prisoners receive 12-months in CCC or RRC placement. See 18 U.S.C. § 3624(c); Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 251 (3rd Cir. 2005)(providing that in exercising its discretion in determining when an inmate should be transferred to a CCC or RRC, the BOP must consider the five factors set forth in Section 3621(b) and stating that "that the BOP may assign a prisoner to a CCC does not mean that it must."). On April 14, 2008, the BOP issued a memorandum stating that the Regional Director's approval is required for CCC or RRC placements beyond six months. Specifically, the memorandum provides as follows:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

(Civil Action No. 5:10-0352, Document No. 2, p. 6.) According to Program Statement 7310.04, the BOP should review a prisoner for CCC or RRC placement 17 to 19 months prior to the prisoner's projected release date. 18 U.S.C. § 3624(c)(4) provides that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." Accordingly, "it is within the sole discretion of the BOP whether to place a prisoner in an RRC, and if so, for how long." Garrison v. Stansberry, 2009 WL 1160115, *4 (E.D.Va.

2009)(citations omitted). Therefore "the Court only has authority to review whether the BOP properly reviewed Petitioner's case on an individualized basis and followed § 3621(b)'s five factors." Id.

The record clearly indicates that Petitioner was properly considered for CCC or RRC placement pursuant to Sections 3621(b) and 3624(c) and BOP regulations. Respondent stated in his response to Petitioner's administrative complaint that Petitioner's Unit Team considered him for placement in a CCC or RRC utilizing the five factors specified in Section 3621(b). Petitioner indicates that the BOP determined that he should be designated to such placement for 150 - 180 days. It is evident that Petitioner was given individualized consideration. There is no indication in the record that the BOP's determination was categorical. See Syrek v. Phillips, 2008 WL 4335494 (N.D.W.Va. Sep. 17, 2008)(finding that "the BOP must consider the § 3621(b) statutory factors" and "cannot rely upon a categorical formula to determine the length of an inmate's CCC placement"); also see Specter v. Director Federal Bureau of Prisons, 2010 WL 883733, * 5 (D.S.C. Mar. 5, 2010)(slip copy)(stating that "[u]nder these new regulations, an inmate presents a valid claim only if he is denied individual consideration based on § 3621(b) factors"); Garrison v. Stansberry, 2009 WL 1160115 at * 5(finding that "the Court lacks the authority to direct the BOP to consider specific characteristics for each prisoner who is reviewed for RRC placement; the Court is limited to asking whether the BOP used the five factors and cannot engage in a review of the substantive merits or thoroughness of the BOP's analysis"). Therefore, the undersigned finds that the BOP has not acted inconsistently with Congress' directions under the Second Chance Act and properly considered Petitioner for CCC or RRC placement pursuant to Sections 3621(b) and 3624(c) and BOP regulations. Petitioner is therefore not in custody in violation of the Constitution or laws of the United States, and for this additional reason, his Petition should be dismissed.

  **C.** **<u>Injunctive Relief</u>.**

Petitioner cannot succeed upon the merits of his claim for relief under Sections 3621(b) and 3624(c) because he was properly considered for CCC or RRC placement under those Sections, and therefore his Motion for Preliminary Injunction is also without merit.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. (Document Nos. 1 and 7.), **DENY** Petitioner's Motions for Preliminary Injunction (Document No. 8.) and **REMOVE** this matter from the Court's docket.

Petitioner is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, Petitioner shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v.</u>

Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*.

Date: November 8, 2010.

R. Clarke VanDervort
United States Magistrate Judge